## CHARLOTTE A. DICKEY
### *v.*
## JOHN McDONNELL.

1. ASSAULT AND BATTERY — RAPE — *what circumstances control the rule as to damages.* Although a woman may suspect that the advances of a man are prompted by improper motives, and still willingly accompanies him, and refuses to yield to his wishes only from mercenary motives, these facts do not justify him in resorting to violence and threats to induce her consent.

2. Neither could the previous violence be justified on the ground of ultimate assent to sexual intercourse.

3. If such ultimate assent should be freely given, and not induced by any previous violence, or threats, or fear, then such intercourse should not be made the basis of damages, but the right of action for the previous violence would remain.

4. If, however, the ultimate assent should not be freely given, but yielded only as a consequence of the preceding violence or force, then such sexual intercourse should be regarded as a part of the assault, and a ground of exemplary damages.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was an action of trespass for an alleged assault and battery, brought in the court below by Charlotte A. Dickey against John McDonnell. A trial resulted in a verdict and judgment in favor of the defendant. The plaintiff brings the cause to this court by appeal.

The only question considered by the court is in reference to the propriety of an instruction given on behalf of the defendant, and which is set forth in the opinion of the court.

Messrs. BELLOWS, BALLARD & ABERCROMBIE, for the appellant.

Messrs. MILLER, VAN ARMAN & LEWIS, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action for assault and battery, the plaintiff also alleging that the defendant attempted to commit a rape upon her. Upon the trial the respective parties were sworn by consent, and the evidence was very contradictory. We do not propose to express any opinion upon it, nor to allude to it further than may be necessary, in order to show the objectionable character of one of the instructions. On motion of the defendant, the court gave the following instruction:

"If the jury believe from the evidence that the plaintiff, on the evening of the day of the alleged assault, willingly rode with the defendant in his carriage, that the motive of the defendant was to have sexual connection with the plaintiff, and that the plaintiff understood or suspected this to be his motive, and after discovering this still freely and voluntarily consented to ride with him until they had reached a secluded place, and that she freely and voluntarily alighted from said carriage, and that the resistance she made to defendant's advances was either feigned or made for the purpose of extorting money from the defendant, and that the plaintiff ultimately voluntarily assented to defendant's advances, then the jury should find for the defendant."

The plaintiff testified that the defendant threw her upon the ground, put his knees on her stomach, choked her, and threatened her, and that she nearly fainted. This testimony is to some extent corroborated by that of plaintiff's sister, who testified that on the next day plaintiff's body was covered with bruises. We do not assert that this evidence was true, but it

was for the jury to pass upon that question; and let us suppose they believed it to be true.   The proposition then enunciated in this instruction, when considered upon the hypothesis that the jury should prefer to believe the plaintiff rather than the defendant, is, that, if the plaintiff, when she went to drive with the defendant, suspected that his object was to have sexual intercourse with her, and if she freely alighted from the carriage, and if her resistance was feigned, or made to extort money, and if she ultimately consented, then the verdict must be for the defendant, although such ultimate consent may have been preceded by a process of choking and threatening, in order to bring the plaintiff into a consenting mood.   This is certainly not the law.   It matters not how suspicious the plaintiff was or had reason to be, of the intent of the defendant; it matters not whether her resistance was feigned or real, to preserve her purity, or to sell her virtue on her own terms and at her own price; it matters not whether she finally assented to the sexual connection,—still, if that assent was preceded by brutal violence administered for the purpose of overcoming her resistance, then for such violence the defendant must be made to answer.   It certainly cannot be contended, because a woman would sell her person for one hundred dollars, and would resist with all her physical force any attempt to take possession of her except upon these terms, that, therefore, violence may be lawfully used to overcome her; and if, after such violence had been sufficiently used, she should yield to her pursuer, that this ultimate assent would condone all previous illegality and outrage.   Even the poor prostitute must be shielded by the law from violence, and, however low may be the motive of her refusal, we are not aware that it would be lawful to extort her consent by choking her, or that the violence could be justified on the ground that her refusal sprang from mercenary motives.

Neither could the previous violence be justified on the ground of ultimate assent to sexual intercourse.   It is true, if such ultimate assent should be freely given, and not induced by any previous violence or threats or fear, then such intercourse

should not be made the basis of damages, but the right of action for the previous violence would clearly remain. If, however, the ultimate assent should not be freely given, but yielded only as a consequence of the preceding violence or force, then such sexual intercourse should be regarded by the jury as a part of the assault, and a ground of exemplary damages. But if, on the other hand, in the case at bar, all the acts of the plaintiff were freely assented to by the defendant, then, it is almost needless to say, he must go free from even nominal damages. The judgment is reversed, and the cause remanded.

*Judgment reversed.*

Dissenting opinion of Mr. Justice Breese :

I do not concur in this opinion, for the reason that the plaintiff has no merits. Such as they are, they were fully disclosed to the jury by the testimony of the parties concerned, and the jury have found against the plaintiff on her own evidence. I doubt if a case can be found in the books, where a plaintiff, not having a meritorious cause of action, having failed to obtain a verdict, a new trial has been granted. In my opinion, the record shows that justice was done, and if the instruction was erroneous, we have often said a verdict should not be set aside if the record shows justice was done.